IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANNE M. RISSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:09-0386 |
| | ) Judge Trauger |
| THE METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) |
| COUNTY, TENNESSEE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 8) filed by the defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"). For the reasons discussed herein, the defendant's motion will be granted, although the plaintiff's state law claim will be dismissed without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anne M. Risser is a disabled former school teacher and a resident of Williamson County, Tennessee.[1] On March 13, 2006, an entity known as Nobel Properties ("Nobel") sued the plaintiff in the General Sessions Court of Davidson County, Tennessee to recover real property located at 1543 Battlefield Drive in Nashville, Tennessee, which was the plaintiff's residence at the time. Three days later, Nobel and the plaintiff came to an agreement whereby

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

the plaintiff would vacate the premises by April 15, 2006, and, on March 21, 2006, a judgment was entered in the General Sessions Court reflecting that agreement. (Docket No. 1 Ex. B.)

By April 21, 2006, the plaintiff had not vacated the Battlefield Drive property, and, therefore, Nobel's attorney, Michelle Poss, filed a Writ of Restitution in the General Sessions Court to start eviction proceedings at the property. By April 25, 2006, the plaintiff's attorney, Alan Housholder, had received a copy of the Writ. He informed Ms. Poss that the Writ was defective, and, either way, the plaintiff was in the process of moving and would be off of the premises shortly. With this conversation, Mr. Housholder believed that he had an agreement with Ms. Poss that no eviction would take place before May 1, by which time the plaintiff would have completed her move. Indeed, on April 27, 2006, the plaintiff moved her "big items of furniture" from the Battlefield Drive property to her new apartment, and, on that day, the Battlefield Drive property was sold.

The next day, the plaintiff went back to the Battlefield Drive property to remove the remainder of her property, but she "found that the personalty inside the house was being dumped into the front yard by Deputy Sheriff Robert W. Lillard, Jr., a deputy sheriff appointed by the sheriff of Davidson County, Tennessee." (Docket No. 1 at 2.) The plaintiff claims that she became "hysterical ... after seeing her precious personalty being dumped randomly into the front yard." (*Id.*) After seeing this, the plaintiff called Mr. Housholder, who, in turn, called Mr. Lillard and told him that the Writ was defective and that he should cease the eviction. Mr. Lillard apparently ignored Mr. Housholder's arguments, and the eviction continued. Immediately thereafter, Mr. Housholder went to the General Sessions Court and received an

2

Order from Judge Holt that the eviction cease on the grounds that there was never an order that actually granted possession of the Battlefield Drive property to Nobel. Judge Holt telephoned Mr. Lillard and ordered him to stop the eviction. While the eviction ceased at this point, the plaintiff claims that Mr. Lillard left the plaintiff's items "stashed and trashed in the front yard." (*Id.* at 3.) By May 1, 2006, the plaintiff "had completely removed all of her remaining personalty out of the Battlefield Drive premises except for a small amount of trash." (*Id.*)

The plaintiff alleges that her rights were violated by the eviction. She claims that Mr. Lillard had her "delicate, precious, fragile, and valuable antiques ... musical instruments from around the world ... puzzles, dolls, and literature," among many other things, "thrown indiscriminately into her linens and trash bags and/or otherwise dumped randomly into the front yard onto wet grass" and this "dumping" caused many of these items to be broken, damaged, or ruined. (*Id.*) The plaintiff asserts liability against Metro here because, she claims, Lillard "utiliz[ed] the routine procedures of the Davidson County Sheriff's Office Civil Warrant Division." (*Id.*) The plaintiff claims that, in addition to the damage to her property, she had severe mental, emotional, and physical suffering as a result of the manner in which the eviction was carried out.

The plaintiff filed an earlier suit regarding this eviction. In April 2007, the plaintiff filed Davidson County Circuit Court Case No. 07-CV-1161 (*Risser v. Wallace, et al.*) naming Nobel, Poss, Lillard and two other individuals associated with Nobel as defendants. (Docket No. 8 Ex. D.) In April 2008, Lillard's Motion for Summary Judgment in that case was granted, and all claims against him were dismissed. (Docket No. 8 Ex. A.) Shortly thereafter, the plaintiff

3

moved to amend her state court complaint to add Metro as a defendant and to assert claims under T.C.A. § 8-8-301 and the Governmental Tort Liability Act (GTLA) against Metro. (Docket No. 8 Ex. E.) With the Circuit Court's approval, Metro made a limited appearance and objected to the motion to amend. (*Id.*) On June 6, 2008, the Circuit Court denied the motion to amend because (1) as to the T.C.A. § 8-8-301 claim, the motion to amend was untimely and (2) as to the GTLA claim, the motion to amend was futile. (*Id.*)

On April 27, 2009, the plaintiff filed her Complaint in this court, alleging that Metro is liable under T.C.A. § 8-8-301, *et seq*. and 42 U.S.C. § 1983. Metro has moved to dismiss the Complaint on various grounds.

## **ANALYSIS**

The plaintiff claims that defendant Metro violated her rights under 42 U.S.C. § 1983 and that Metro is also liable under T.C.A. § 8-8-301 *et seq*., which provides, among other things, that an individual may bring suit against the county in which a sheriff's deputy serves for certain types of misconduct by the deputy. *See* T.C.A. § 8-8-302. As to the Section 1983 claim, the plaintiff alleges that the eviction violated her rights to due process under the Fourteenth Amendment to the U.S. Constitution. Defendant Metro has moved to dismiss both claims, arguing that they are barred by *res judicata* principles, that the Section 1983 claim is time barred, and that the Section 1983 claim fails to state a claim for relief, because the plaintiff "was provided an adequate remedy at state law." (Docket No. 17 at 4.)

**I.      Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6)[2], the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion

---

[2] Metro does not indicate the provision of Rule 12 under which it seeks dismissal, but *res judicata* and statute of limitations arguments have been found to be appropriate for consideration under Rule 12(b)(6). *See ABS Industries v. Fifth Third Bank*, 2009 WL 1811915, *3 (6th Cir. June 25, 2009)(*res judicata*); *Jones v. Whittaker*, 316 Fed. Appx. 463, 463 (6th Cir. 2009) (statute of limitations).

5

of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536 (May 18, 2009), the Court further expounded on the "two working principles" that underlie the *Twombly* decision. *Id.* at 1949. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

6

action, supported by mere conclusory statements, do not suffice" to state a claim under the federal rules. *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.

Further, the Court explained that determining "facial plausibility" is a "context-specific task," in which the reviewing court must "draw on its judicial experience and common sense." *Id.* at 1950. Where, using this background, the court finds that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)). The Court noted that, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## II. Section 1983 Claim

As noted above, the plaintiff asserts a claim against Metro under Section 1983 and T.C.A § 8-8-301, *et seq*. The defendant argues that the Section 1983 claim is time barred. The defendant points out that the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is determined by Tennessee state law, and that the Tennessee Code states that "civil actions

7

for compensatory or punitive damages, or both, brought under the federal civil rights statutes" "shall be commenced within one year after the cause of action accrued." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); T.C.A. § 28-3-104(a)(3). Here, the Complaint alleges that the plaintiff's property was "stashed and trashed" during an improper eviction on April 28, 2006, but her Complaint was not filed until April 27, 2009, almost exactly three years after the cause of action accrued.

In response, the plaintiff contends that her Section 1983 claim is not time barred because "Tennessee has separate limitations of action statutes for personal tort actions and property tort actions. T.C.A. § 28-3-105 provides a three-year statute of limitations for property tort actions. T.C.A. § 28-3-104 allows a one-year statute of limitation for personal tort actions." (Docket No. 13 at 4.)[3] The plaintiff argues that her Complaint asserts an injury to property, and, therefore, her claim is governed by a three-year statute of limitations, and the Section 1983 claim is, therefore, timely. The plaintiff goes on to cite a series of non-Section 1983 cases in which the Tennessee courts distinguish the "one year statute of limitation for tortious personal injury" found in Section 104 from "the three year statute of limitation for tortious property damage" found in Section 105 and then look to the "gravamen" of the complaint to determine which statute of limitations should apply. (Docket No. 13 at 4-8 citing *e.g. Vance v. Schulder*, 547 S.W. 2d 927 (Tenn. 1977); *Gunter v. Laboratory Corp. of America*, 121 S.W. 3d 636 (Tenn. 2003); *Whaley v. Perkins*, 197 S.W. 3d 665 (Tenn. 2006).

---

[3]The titles of the statutes do indicate that Section 104 is a limitations of action provision related to "torts; persons" and Section 105 is a limitations of action provision related to "torts; property." T.C.A. § 28-3-104; T.C.A.§ 28-3-105.

8

The plaintiff's precise argument was rejected by the Sixth Circuit last year. *See Porter v. Brown*, 289 Fed. Appx. 114 (6th Cir. 2008). In that case, the plaintiff argued that the district court erred in determining that a one-year statute of limitations applied to his Section 1983 claim because the plaintiff claimed that he primarily suffered injuries to his property, and, therefore, a three-year limitations period should apply. *Id.* at 116. The court noted that "our precedent has long made clear that the limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provision found in T.C.A. § 28-3-104(a)." *Id.* (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986)).

Further, the court concluded that the U.S. Supreme Court had already "stuck a dagger" in the plaintiff's theory that the limitations period for his Section 1983 claim could be variable based on the category of underlying harm that he alleged. *Id.* Indeed, in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005) the Supreme Court noted that it had "expressly reject[ed] the proposition that the limitations period for a Section 1983 claim depends on the nature of the underlying right being asserted." Rather, in each state, "the one most appropriate statute of limitations for *all* Section 1983 claims" is to be selected. *Id.* (emphasis in original). Here, as repeatedly and concretely stated by the Sixth Circuit, "the one" statute of limitations for "all Section 1983 claims" arising in Tennessee is the one-year statute of limitations discussed above.

In light of this clear precedent, the plaintiff's Section 1983 claim is subject to a one-year statute of limitations. As the Complaint indicates that the plaintiff did not file her Section 1983

9

claim until three years after the claim accrued, the plaintiff's Section 1983 claim is time-barred and must be dismissed with prejudice.[4]

**III.    T.C.A. § 8-8-301 Claim**

Because the plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331 (Docket No. 1) and because the court will dismiss the only federal claim in this case, the next issue is whether the court should decline to exercise supplemental jurisdiction over the plaintiff's T.C.A. § 8-8-301 claim. A federal district court "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

District courts are generally considered to have broad discretion over whether to dismiss a state-law claim in this instance. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). That said, given the "constitutional and prudential limits on the use of federal judicial power," the "balance of considerations" (considerations including judicial economy, convenience, fairness, and comity) for the district court will usually point "to dismissing the state law claims" in a

---

[4] In support of her argument for a distinction, the plaintiff also cites *Hill v. State of Tennessee*, 868 F. Supp. 221 (M.D. Tenn. 1994), a Section 1983 case. The plaintiff argues that *Hill* "cited both T.C.A. § 28-3-104 and T.C.A. § 28-3-105 and decided 'plaintiff's [Section 1983] claim is most analogous to a personal injury claim, rather than one for property damage ...'" (Docket No. 13 at 5 quoting *Hill*, 868 F. Supp. at 224.) In *Hill*, Section 105 is largely cited because the plaintiff in that case advanced the same argument that the plaintiff is advancing here, and, as here, the court rejected that argument. While *Hill* is perhaps not as definitive as the Sixth Circuit that only one statute of limitations applies to Section 1983 actions brought in Tennessee, that is of no moment here, as the Sixth Circuit opinion on the matter is binding precedent, post-dating *Hill* by more than a decade.

10

Section 1331 case in which no federal cause of action remains. *Musson*, 89 F.3d at 1254-55; *see also Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (finding that "overwhelming interests in judicial economy" should be in play before the district court exercises its discretion to decide a pendant state court claim after the federal claim has been dismissed pre-trial.)

Moreover, when the litigation is in its earliest stages and the federal claim is dismissed, the balancing usually points especially strongly in favor of declining jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988)(stating that supplemental jurisdiction remains a "doctrine of flexibility" but also stating that, "when the balance of these factors indicates that a case properly belongs in state court, as when the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.")

Here, the lone federal claim in this federal question case has "dropped out" of the lawsuit at the motion to dismiss stage. The only remaining claim arises under Tennessee law and is asserted by a Tennessee plaintiff against a Tennessee defendant. Under the standard discussed above, there is a very strong argument that this state law claim should be dismissed without prejudice so that the plaintiff may re-file in Tennessee state court.

Neither party addresses the supplemental jurisdiction issue in briefing. The defendant asks the court to dismiss the state law claim, with prejudice, arguing that the claim is barred under *res judicata* principles. (*See e.g.* Docket No. 8 at 4-6; Docket No. 17 at 1-3.)

"To obtain dismissal [of a claim] based on *res judicata*, the party asserting the defense

11

must show that (1) a court of competent jurisdiction rendered the underlying judgment; (2) the same parties or their privies were involved in both proceedings; (3) both proceedings involved the same cause of action; and (4) the underlying judgment was final and on the merits." *Roberts v. Vaughn*, 2009 WL 1608981,*3 (Tenn. Ct. App. June 10, 2009). To satisfy the "same cause of action" prong, the party asserting *res judicata* need only show that the claims in both cases arose out of the "same transaction or a series of connected transactions." *Id.* at *5.

Here, Metro contends that (1) the judgment from the Circuit Court in favor of Deputy Lillard operates as the necessary "underlying" and "final" judgment; (2) the "same parties" prong is satisfied because Deputy Lillard was the "privy" of Metro, and (3) the "same cause of action" prong is satisfied because both disputes stem from the allegedly wrongful eviction. (Docket No. 8 at 5.)

As noted above, there is a strong basis for dismissing this state law claim without prejudice so that the plaintiff may re-file in state court. Perhaps, if Metro's *res judicata* argument appeared to be a crystal clear "winner" for Metro, it would better serve the interests of judicial economy to consider the argument and potentially dismiss the state law claim with prejudice, rather than dismiss the claim without prejudice and have the plaintiff re-file the state law claim in state court. Metro's *res judicata* argument is not such a crystal clear winner, however. For instance, the parties' briefing demonstrates legitimate debate about whether Lillard and Metro were, in fact, privies as that term is used in the *res judicata* context.[5] *See*

---

[5]In support of its privity argument, Metro cites two cases, both about fifty years old, that considered the concept of privity in the context of "derivative" liability, finding that parties could be in privity for *res judicata* purposes where the liability of one was purely derivative of

12

*Cihlar v. Crawford*, 39 S.W. 3d 172, 180 (Tenn. Ct. App. 2000)("privity connotes an identity of interest, that is, a mutual or successive interest to the same rights. ... the existence of privity or identity of interest for the purpose of applying res judicata and collateral estoppel depends on the facts of each case.")

The merits of the arguments here are for the state court. As *Cohill* indicated, there is a very strong presumption that the court should dismiss the state court claim now that the federal claim in this federal question lawsuit has disappeared. Further, the briefing of the *res judicata* issue as to the remaining state law claim indicates that the outcome of that issue is not so obvious that "overwhelming interests" of judicial economy dictate that the court should take up the *res judicata* issue. Therefore, the court will dismiss the state law claim, without prejudice, so that the plaintiff may re-file in state court.

---

the other. (Docket No. 8 at 5 citing *Caldwell v. Kelly*, 302 S.W. 2d 815, 816-17 (Tenn. 1957); *Davis v. McKinnon & Mooney*, 266 F.2d 870, 873 (6th Cir. 1959)). In response, the plaintiff argues that she is not asserting liability against Metro on a "derivative" basis, noting that Lillard was accused of intentional infliction of emotional distress in the state court proceeding and "the issues in the current case have nothing to do with intentional infliction of emotional distress." (Docket No. 13 at 3.)

13

## CONCLUSION

For the reasons discussed above, Metro's Motion to Dismiss will be granted. That is, the plaintiff's Section 1983 claim will be dismissed with prejudice as time barred, and, as the lone federal claim in this federal question case will be dismissed, the court will decline to exercise jurisdiction over the remaining state law claim, and that claim will be dismissed without prejudice so the plaintiff may re-file in state court.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14